UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:19cr65(VLB) |
| | : | |
| v. | : | |
| | : | JANUARY 6, 2020 |
| ROBERT GRANT HALL | : | |

<u>MEMORANDUM OF DECISION</u>

Before the Court are motions filed on behalf of the defendant, Robert Grant Hall ("Mr. Hall") with leave of the court by his second court-appointed CJA attorney (Attorney Audrey Felsen), and motions filed by him *pro se* without leave of the Court. Prior to the filing of the above motions, on September 22, 2020, Mr. Hall filed a "motion to proceed pro se with the aid of counsel of record," which the Court interprets to be a motion for self-representation with standby counsel. Dkt. 471. The Court conducted a hearing on this motion on October 6, 2020 at which leave was granted for Attorney Felsen to file motions on behalf of Mr. Hall advocating positions he wanted her to advance, for the purpose of preserving the record for appeal. [Dkt. 486 (Audio 10/6/2020 12:10:45PM)]. The Court deferred a decision on Mr. Hall's motion for self-representation to allow defense counsel to file the motions. *Id.*

The motions filed by counsel are: (1) a motion for a bill of particulars, (2) a motion to sever, and (3) a motion to dismiss indictment on the grounds that violations of 21 U.S.C. § 841(a) cannot be applied to a violation of § 846. [Dkt. 499, 506 and 507, respectively]. The motion to dismiss that was drafted by counsel argued a single basis for dismissal—that § 841(a) cannot be applied to a violation

1

of § 846.  Dkt. 507.  The motion also included motions directly drafted by Mr. Hall without any articulation as discussed at the October 6th hearing.  [Dkt. 507].  The Government filed an opposition to these pretrial motions.  [Dkt. 521].

After the motions were filed and the Government filed its opposition, Mr. Hall filed a motion for the appointment of new counsel and three substantive motions styled as motions to bar prosecution seeking dismissal of the indictment on the grounds that § 841(b)'s penalty provisions do not apply, § 846 is unconstitutional, and for improper joinder/duplicity. [Dkt. 518, 524, 525, 526, and 527, respectively]. Mr. Hall's *pro se* motions were filed without leave of the Court. The Government filed an opposition to the additional pretrial motions.  [Dkt. 535].

For the foregoing reasons, the Court DENIES the motion for a bill of particulars, motion to sever, and motions to dismiss.

I.    BACKGROUND

On March 5, 2019, a grand jury indictment was entered against Mr. Hall and twelve others.  Indictment, Dkt. 21.  Thereafter, on March 18, 2020, a grand jury returned a superseding indictment against Mr. Hall and four others.  Superseding Indictment, Dkt. 348.  Count one of the superseding indictment charges Mr. Hall with conspiracy to distribute and to possess with intent to distribute heroin, cocaine, and cocaine base in violation of 21 U.S. §§ 846, 841(a)(1), 841(b)(1)(B)(ii), 841(b)(1)(B)(iii), and 841 (b)(1)(C).  The grand jury charged that "[f]rom in or about April 2018 through on or about February 20, 2019, the exact dates being unknown to the Grand Jury, in the District of Connecticut and elsewhere," Mr. Hall and his co-defendants, "and others known and unknown to the Grand Jury, did knowingly

and intentionally conspire to violate the narcotics laws of the United States." *Id.* at ¶ 1. Further, "[i]t was a part and object of the conspiracy that the defendants" Mr. Hall and his co-defendants "together with others known and unknown to the Grand Jury, would distribute and possess with intent to distribute controlled substances, namely heroin, cocaine and cocaine base ("crack cocaine") . . . ." *Id.* at ¶ 2.  The grand jury charged that Mr. Hall "knew from his conduct as a member of the narcotics conspiracy charged in Count One and from the reasonably foreseeable conduct of other members of the conspiracy that the conspiracy involved 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(B)(ii)." *Id.* at ¶ 4.  In addition, the grand jury charged Mr. Hall with foreseeable quantities of "28 grams or more of a mixture and substance containing a detectable amount of cocaine base" and "a mixture and substance containing a detectable amount of heroin." *Id.* at ¶¶ 6, 8.

On August 5, 2019, Mr. Hall's first court-appointed counsel, Attorney Bethany Phillips, filed a motion to withdraw as counsel citing to a breakdown of the attorney client relationship. Dkt. 191.  The motion was referred to Magistrate Judge Richardson, who granted the motion.  Dkt. 215.  On August 23, 2019, the Court appointed Attorney Felsen, his current CJA appointed attorney,  to represent Mr. Hall.

## II.    PROCEDURAL BACKGROUND

On September 22, 2020, Mr. Hall filed a "motion to proceed *pro se* with the aid of counsel of record."  Dkt. 471.  The Court conducted a hearing on this motion

on October 6, 2020.  Dkt. 486 (Audio 10/6/2020 12:10:45PM).  At the hearing, defense counsel informed the Court  that Mr. Hall was not necessarily seeking to proceed pro se, rather he was seeking a sort of 'hybrid representation' where he could file certain motions that counsel would not file on his behalf in good faith.  *Id.*  Attorney Felson stated that upon reflection there was one motion that Mr. Hall wanted filed that she could ethically file.  *Id.*  The Court authorized counsel to file motions Mr. Hall wanted her to file and that she could ethically file.  *Id.*  The Court inquired whether counsel could articulate the arguments that Mr. Hall wished to raise and, without jeopardizing her relationship with Mr. Hall, explain why she was unwilling to file those motions for the purpose of forming the record Mr. Hall sought.  *Id.*  Counsel indicated that she would be willing to do that.  *Id.*  The Court deferred a decision on Mr. Hall's motion to allow Attorney Felsen to file motions on behalf of Mr. Hall and for Mr. Hall to reconsider whether he was satisfied with his representation.  *Id.*

After Attorney Felsen filed motions on his behalf, Mr. Hall filed a letter to the Court requesting new counsel because the attorney client relationship has broken down.  Dkt. 518.  His motion states "there has been an attorney client breakdown in communication and trust.  I cannot effectively prepare a defense myself for trial I would like to request new counsel."  *Id.*  Then, without authority to do so, Mr. Hall filed several additional motions pro se directly with the Court.  Dkt. 524, 525, 526, 527; Dkt. 486 (Audio).

An indigent criminal defendant is entitled to competent legal representation at public expense.  *See* Dkt. 486 (Audio); *McCoy v. Court of Appeals Wisconsin,*

4

*Dist. 1*, 486 U.S. 429, 436, 108 S. Ct. 1795, 100 L. Ed. 2d 440 (1988); *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2063, 80 L. Ed. 2d 674 (1984) ("the right to counsel is the right to the effective assistance of counsel.").   An indigent criminal defendant is not entitled to counsel of his choice.   *Luis v. United States*, 136 S. Ct. 1083, 1089, 194 L. Ed. 2d 256 (2016).   When he elected to be represented, he relinquished some autonomy to the court appointed attorney, because matters of trial management are the lawyer's province, not the defendants.   *United States v. Rosemond*, 958 F.3d 111, 119 (2d Cir. 2020); *McCoy v. Louisiana*, 138 S. Ct. 1500, 1508, 200 L. Ed. 2d 821 (2018).   Some decisions are his and his alone, such as whether to plead guilty, whether to waive the right to a jury trial, whether to testify on his own behalf, and whether to forgo an appeal.   *McCoy*, 138 S. Ct. at 1508.   But decisions such as what arguments to pursue and objections to make are relinquished to his counsel.   *Id.*   "[T]he rights of self-representation and representation by counsel 'cannot be both exercised at the same time.'"   *O'Reilly v. New York Times Co.*, 692 F.2d 863, 868 (2d Cir. 1982).

The Second Circuit considers four factors when reviewing a district court's decision on the substitution of counsel: "(1) whether defendant made a timely motion requesting new counsel; (2) whether the trial court adequately inquired into the matter; . . . (3) whether the conflict between the defendant and his attorney was so great that it resulted in a total lack of communication preventing an adequate defense. . . . (4) whether the defendant substantially and unjustifiably contributed to the breakdown in communication."   *United States v. Doe*, 272 F.3d 116, 122–23 (2d Cir. 2001) (internal quotation marks omitted).   When the breakdown of

5

communication is induced by the defendant, such breakdown does not establish good cause warranting the appointment of new counsel. *Id.* at 123.

Mr. Hall's motion for the appointment of new counsel is devoid of any facts or analysis from which the Court can analyze whether he is entitled to substitute counsel. However, his *pro se* motions, are indicative of the basis for the breakdown in the attorney-client relationship. This is because his stated reason for requesting hybrid representation was so that he could file motions his attorney refused to file as lacking legal merit. The motions Mr. Hall filed reflect the basis of the disagreement he has with and why he feels he cannot communicate effectively with his attorney. Accordingly, the Court will rule on Mr. Hall's *pro se* motions as the Court's analysis will assist in determining whether the conflict between Mr. Hall and his attorney is so great that it resulted in a total lack of communication preventing an adequate defense and whether Mr. Hall substantially and unjustifiably contributed to the breakdown in his relationship with his attorney.

The Court's decision to rule on these motions is an indulgence affording Mr. Hall latitude, which will not be repeated. The Clerk of the Court is ordered to summarily return to Mr. Hall any motions he files while represented by counsel without docketing. Any material returned to Mr. Hall must be appended to the docket item memorializing return of the submission.

III.     BILL OF PARTICULARS

Under Federal Rules of Criminal Procedure 7(f):

The court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits. The

government may amend a bill of particulars subject to such conditions as justice requires.

A bill of particulars is required where the indictment is so vague and indefinite that it fails to state the alleged facts forming the basis of the charged offense sufficient to enable the defendant to prepare a defense. *See United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988); *United States v. Smith*, 16 F.R.D. 372, 374–75 (W.D. Mo. 1954). "Generally, if the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). "While a bill of particulars 'is not intended . . . as a means of learning the government's evidence and theories,' if necessary to give the defendant enough information about the charge to prepare his defense, 'it will be required even if the effect is disclosure of evidence or of theories.'" *United States v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998).

Mr. Hall, through his counsel, has filed a Motion for Bill of Particulars moving for an order for the Government to provide Particulars as it relates to the conspiracy charged in the Indictment:

1) Regarding the conspiracy count, the time, place and date the defendant became a member of the conspiracy.
2) Any overt acts which will be used to indicate knowledge or intent on the part of defendant to conspire to distribute and to possess with intent to distribute heroin, cocaine and cocaine base.
3) Any overt acts performed by the defendant in furtherance of the alleged conspiracy.
4) The specific date of any alleged overt acts in which the defendant was a direct participant which the government intends to introduce into evidence against the defendant.
5) The alleged conduct that establishes the drug amount charged in the Indictment.

Mot. for Bill of Particulars at 1–2.  Mr. Hall argues that the indictment is inadequate on its face to provide him with sufficient detail to adequately prepare a defense to the charges against him because this is a large scale, multi-defendant drug conspiracy and he has not been charged with any overt acts.  He argues, summarily that "[t]he specified notice is necessary for the defendant to prepare his defense, avoid unfair surprise and prevent double jeopardy."  Mot. for Bill of Particulars at 5.

The Government argues that a bill of particulars is unnecessary and unwarranted.  In support, the Government states that is has provided discovery and has been responsive to all inquiries from defense counsel regarding discovery.

The Court agrees with the Government.  The motion does not set forth why the particulars requested are necessary aside from conclusory statements that they are.  Further, Mr. Hall does not assert that this information could not be provided in some acceptable alternate form.  Nor does he state the information has not been produced in some alternate acceptable form.  Finally, he does not allege the government is not produced the information required to be disclosed by this district's Criminal Appendix, Standing Order on Discovery.

Mr. Hall has not established that a bill of particulars is required for him to prepare a defense and therefore the Court denies his motion for a bill of particulars.

## IV.    SEVERANCE

Mr. Hall has filed a motion seeking to sever his trial from his co-defendants. The Government objects.

Federal Rules of Criminal Procedure 8(b) provides that:

The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Rule 14 provides that "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."

"There is a preference in the federal system for joint trials of defendants who are indicted together. Joint trials 'play a vital role in the criminal justice system.'" *Zafiro v. United States*, 506 U.S. 534, 537, 113 S. Ct. 933, 937, 122 L. Ed. 2d 317 (1993) (citation omitted).  Joint trials "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Id.* (citation omitted).

Mr. Hall claims that based on the discovery materials disclosed, there is no evidence that he interacted with, for criminal purposes or otherwise, some of the individuals who are set to move forward for trial at this time.  Mot. to Sever at 3.  Mr. Hall argues that there will be unavoidable and substantial spillover prejudice from the evidence presented against his co-defendants, related to charged conduct in which he is not alleged to have been involved.  *Id.* at 6.  Of particular concern are the "sizeable number of intercepted communications" that will be presented in this trial to which Mr. Hall was not a party and about which he was unaware.  *Id.*

9

Mr. Hall does not identify the conduct in which he was not involved. For purposes of this decision, the Court will assume that the conduct to which he refers is relevant to the Government's claims because it would be inadmissible otherwise.

The fact that Mr. Hall is not alleged to have been involved in all aspects of the conspiracy is not a basis for severance.  In establishing the existence of a conspiracy, the Government must establish "(1) the existence of the conspiracy charged, . . . (2) that the defendant had knowledge of the conspiracy, . . . (3) that the defendant intentionally joined the conspiracy . . . , [and] (4) that it was either known or reasonably foreseeable to the defendant that the conspiracy involved the drug type and quantity charged." *United States v. Santos*, 541 F.3d 63, 70–71 (2d Cir. 2008).

There is no requirement in law that the Government prove that Mr. Hall communicated with, or even knew of, all of his co-defendants.  *See United States v. Anderson*, 747 F.3d 51, 61 (2d Cir. 2014) ("a defendant may be a conspirator even if he knew only one other member of the group, and 'a single act may be sufficient for an inference of [his] involvement in a criminal enterprise of substantial scope at least if the act is of a nature justifying an inference of knowledge [and intent to further the aims] of the broader conspiracy.'").

Mr. Hall's relative involvement is an essential element of the Government's proof and the Court's determination of the appropriate sentence to impose. Evidence of the conduct of all the alleged co-conspirators is relevant to the trier's determination of the existence, nature and scope of the alleged conspiracy and the drug quantity involved; as well as the Court's determination of the relative roles of

each proven co-conspirator and the application of the role adjustment provisions of the Sentencing Guidelines.

As stated above, two of the elements the Government must establish is the existence of the conspiracy itself and that it was either known or reasonably foreseeable to the defendant that the conspiracy involved the drug type and quantity charged. *Santos*, 541 F.3d at 70–71. "[T]he conspiratorial agreement itself may be established by proof of a tacit understanding among the participants, rather than by proof of an explicit agreement, and the absence of an actual sale or seizure of narcotics does not render insufficient the proof of a conspiracy to distribute it. *Id.* at 71. In proving the conspiratorial agreement, the Government can prove this by showing the conspirators agreed on "essential nature of the plan." *United States v. Babilonia*, 854 F.3d 163, 175 (2d Cir. 2017). Actual participation can be proven by circumstantial evidence. *Id.* In other words, the Government may call the co-defendants charged with Mr. Hall in the superseding indictment to prove the nature and scope of the conspiracy and the drug quantity involved. Meaning, many of the evidence in cases against the co-defendants is relevant to the case against Mr. Hall.

If Mr. Hall is convicted on count one of the indictment, the nature and scope of the conspiracy will be relevant to his sentencing. For example, in determining the base offense level for a Guidelines calculation will require considering what the reasonably foreseeable drug quantity was for this conspiracy. U.S.S.G. § 2D1.1(a)(5). Also, under § 2D1.1(b)(17)(C) if the defendant can prove, *inter alia*, that he "had minimal knowledge of the scope and structure of the enterprise" he may

be entitled to a two level reduction in his total offense level for Guidelines purposes.  In order to determine what Mr. Hall knew compared to the actual scope and structure of the enterprise will require evidence from the other alleged conspirators.  This evidence will also apply in determining whether Mr. Hall should receive an adjustment under §§ 3B1.1 and 3B1.2 for an aggravating or mitigating role.  Further, evidence of the scope and nature of the conspiracy would be necessary to determine if Mr. Hall could be safety-valve eligible under § 5C1.2(a)(4), which requires Mr. Hall not be an organizer, leader, or supervisor of others.

The Court notes that Mr. Hall has not alleged improper joinder of his case with those of his co-defendants, rather his motion to sever is based entirely on the risk of spill-over prejudice.  The Court in *Zafiro* explained that "[w]hen the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but, . . . less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice."  *Id.* at 539.  Mr. Hall fails to establish that, assuming *arguendo* he would be unduly prejudiced, no lesser means would mitigate the prejudice.

A "disparity in the quantity of evidence and of proof of culpability are inevitable in any multidefendant trial, and by themselves do not warrant a severance."  *United States v. Cardascia*, 951 F.2d 474, 483 (2d Cir. 1991).  "[T]he fact that evidence may be admissible against one defendant but not another does not necessarily require a severance."  *United States v. Rittweger*, 524 F.3d 171, 179 (2d Cir. 2008) (Sotomayor, J.).   In *Rittweger,* the Second Circuit held that, even when there was no evidence connecting two co-defendants and the connection

between the two separately charged conspiracies was "tenuous," the court did "not find that the district court abused its discretion in denying severance." *Id.* at 180.   *Rittweger* involved two separately charged conspiracies in a single indictment. *Id.* at 175–76.

Here, this decision is easier to reach than the decision in *Rittweger* because here Mr. Hall was charged in a single conspiracy along with his co-defendants. Meaning, the grand jury had cause to find that Mr. Hall "knowingly and intentionally conspire[d] to violate narcotics laws of the United States" with at least one of his co-defendants.  Superseding Indictment at ¶ 1.

Mr. Hall has not established what spill over evidence is so substantial that would make a jury instruction insufficient to cure whatever prejudice may result. Considering the preference toward joint trials, Mr. Hall's motion does not persuade the Court that severance is necessary.

In addition, the Court does not need to conduct an evidentiary hearing to address Mr. Hall's claim that "there is no evidence in the discovery that Mr. Hall interacted with, for criminal purposes or otherwise, some of the other individuals named in the Indictment."  Mot. to Sever at 3.  An evidentiary hearing is not necessary for two reasons.  First, the Court has already received and reviewed intercepted calls between Mr. Hall and two of his co-defendants, Kareem Swinton and David Sullivan, in the context of Mr. Sullivan's sentencing.  *See* Dkt. 448, 452, 465.  In these calls, there is repeated mention that Mr. Hall owed a debt to Mr. Swinton and Mr. Sullivan.  Though the audio recordings were manually filed, they remain on file with the Court and accessible to Mr. Hall and his counsel.  The

transcripts of these intercepted calls are on the docket report.  *See* Dkt. 447 and 464.  It is also required to be produced to Mr. Hall and his counsel by the district's standing criminal discovery order. Once again, Mr. Hall does not claim the Government has failed to abide by the standing order. Second, as stated above, even if Mr. Hall's claim was true, it does not justify severance of a single count conspiracy.

Therefore, the Court denies the motion to sever.

V.     **DISMISSAL**

Mr. Hall's court appointed counsel has filed a motion to dismiss on his behalf alleging that the penalty provision of § 841(b) cannot be applied to a violation of § 846 because of the use of the phrase "a violation."  Mr. Hall filed the remaining motions to dismiss *pro se*.  The Court has taken every effort to address each claim raised by Mr. Hall, though the briefing on the issues raised are at times disjointed and fail to explain with any specificity the applicability of the cited legal authority to his case.  Generally, Mr. Hall's arguments fall into the following categories: (1) applicability of § 841(b)'s penalty provision, (2) constitutionality of § 846, and (3) joinder/duplicity of §§ 846 and 841.

A.   <u>Applicability of § 841(b)'s Penalty Provision</u>

Mr. Hall argues that the indictment should be dismissed because the penalty provisions under § 841(b) cannot be applied to a violation of § 846.  Mr. Hall argues that a plain reading of § 841(b)(1)(B), which uses the phrase "a violation" references only a single violation and not multiple violations.

Mr. Hall cites to *United States v. Harrison*, 241 F.3d 289 (2d Cir. 2001) for the proposition that § 841 does not call for the aggregation of drug quantities in substantive counts.   In *Harrison*, one of the issues before the Second Circuit related to whether the district court violated Rule 11 when it erroneously told the defendant that he was subject to a five-year mandatory minimum.  *Id.*  The district court in *Harrison* was under the mistaken impression that it could combine the drug weight from two separate counts of the indictment.  *Id.* at 291–92.  The two counts in *Harrison* were distinct where the first related to distributing crack cocaine on October 15, 1998 and the second related to aiding and abetting the distribution of crack cocaine on December 18, 1998.  *Id.* at 291.  The Second Circuit explained that "the five-year mandatory minimum sentence did not apply to [the defendant] because the statute did not call for aggregation of the drug quantities in two substantive counts."  *Id.* at 291 (citing to *United States v. Winston*, 37 F.3d 235, 240 (6th Cir. 1994)).   The two substantive counts in *Harrison* were predicated on separate acts on separate days and not charged as a conspiracy.

The argument Mr. Hall raises under *Harrison* has been rejected by the Second Circuit when in *United States v. Pressley*, where the court held that conspiracy is a single, unified offense constituting "a violation" under § 841(b). 469 F.3d 63, 65 (2d Cir. 2006).  The *Pressley* court addressed the argument raised here, stating that:

> Given the conceptual distinction between conspiratorial and substantive liability . . . we see no conflict between our holding today and our remark in *United States v. Harrison,* 241 F.3d 289 (2d Cir.2001), where we noted that § 841(b) does "not call for aggregation of the drug quantities in the two *substantive* counts." *Id.* at 291 (emphasis added). Further, we do not believe that the result in this case conflicts with the

> congressional intent behind 21 U.S.C. §§ 841(b), 846. We have interpreted § 846, which provides that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the [substantive] offense," as reflecting an effort by Congress to "synchronize" the penalties for a conspiracy and its object. . . . We do not, however, deduce from § 846 any effort to insulate drug conspirators from the long-standing rule treating a conspiracy as a single, unified violation.

*Id.* *Pressley* is controlling precedent that binds this Court to the conclusion rejecting Mr. Hall's argument that the provisions of § 841(b) cannot be applied to a violation under § 846. Therefore, the Court denies Mr. Hall's motion to dismiss asserting this claim.

### B. Constitutionality of Section 846

#### a. Fair Warning of Applicability of Section 841(b)'s Penalty Provision

Mr. Hall argues that § 846 is unconstitutionally vague because it does not give fair warning that the penalties under § 841(b) apply to the prohibited conduct.

The principle behind the prohibition of unconstitutionally vague penal statutes is well established: "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes." *Lanzetta v. State of N.J.*, 306 U.S. 451, 453, 59 S. Ct. 618, 619, 83 L. Ed. 888 (1939).

> [T]he terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law; and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law."

*Id.* "As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people

16

can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *United States v. Rybicki*, 354 F.3d 124, 129 (2d Cir. 2003) (citing to *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983)).  "As with any question of statutory interpretation, we begin with the text of the statute to determine whether the language at issue has a plain and unambiguous meaning."  *United States v. Epskamp*, 832 F.3d 154, 162 (2d Cir. 2016).  "A particular statute's 'plain meaning can best be understood by looking to the statutory scheme as a whole and placing the particular provision within the context of that statute.'"  *Id.*

Section 846 states: "Any person who attempts or conspires to commit any offense defined in this subchapter *shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy*."[1]  (Emphasis added).

Section 846 provides sufficient definiteness that an ordinary person reading it could comprehend the prohibited conduct—attempting or conspiring to commit any offense defined in its subchapter.  Section 846 further provides with sufficient definiteness that an ordinary person reading it could comprehend the penalties for such conduct–the same penalties as those prescribed for the offense.  The language of the statute sufficiently provides fair warning of penalties and protects against arbitrary and discriminatory enforcement because a defendant cannot be

---

[1] Mr. Hall's motion uses an incorrect version of § 846, which refers to "this title," not "this subchapter."  "[T]his subchapter," as referenced in § 846 includes § 841.

convicted unless the Government proves beyond a reasonable doubt each element of the prohibited conduct.

Mr. Hall cites to several cases to support the proposition that a person cannot be punished for a crime that does not have a proscribed penalty. None of these cases apply here. For example, he cites to *United States v. Evans* 333 U.S. 483, 68 S. Ct. 634, 92. Ed. 823 (1948) following his claim that § 846 prescribes no penalty for conspiracy. The issue in *Evans* was whether Section 8 of the Immigration Act of 1917 provided a punishable offense for concealing and harboring aliens. The language section 8 prohibited such conduct but only made punishable landing or bringing in or attempting to land and bring in aliens.[2] *Evans*, 333 U.S. at 483–84. Meaning, though concealing and harboring aliens was unlawful, it was not criminally punishable because Congress failed to proscribe a punishment for such offense. He also cites to *Mossew v. United States*, 266 F. 18 (2d Cir. 1920) for the same proposition that a defendant cannot be punished for an unlawful act for which Congress has not proscribed a punishment for. However, *Evans*, *Mossew*, and related cases do not apply here because § 846 does proscribe a punishment, which is "the same penalties as those prescribed for the offense,

---

[2] "Section 8 of the Immigration Act of 1917 provides: 'That any person * * * who shall bring into or land in the United States (or shall attempt to do so) or shall conceal or harbor or attempt to conceal or harbor, or assist or abet another to conceal or harbor, in any place * * * any alien not duly admitted by an immigrant inspector or not lawfully entitled to enter or to reside within the United States, under the terms of this Act, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine not exceeding $2,000 and by imprisonment for a term not exceeding five years for each and every alien so landed or brought in or attempted to be landed or brought in.'" *Evans*, 333 U.S. at 483–84.

the commission of which was the object of the attempt or conspiracy." Thus, Mr. Hall's reliance on *Evans, Mossew*, and related cases are of no relevance to this case at this stage.

Mr. Hall also makes several references to the First Step Act and "covered offense" as defined therein, but it is unclear to the Court what he is arguing. In the section of his motion discussing the First Step Act he cites to *United States v. Jones,* No. 99-cr-264-5(VAB), 2019 WL 6907304 (D. Conn. Dec. 19, 2019) and *United States v. Powell*, No. 99-cr-264-18(VAB), 2019 WL 4889112 (D. Conn. Dec. Oct. 3, 2019). In *Jones*, the District Court reduced the sentence of someone incarcerated for, among other things, conspiracy to distribute and distribution of more than 50 grams of cocaine base. 2019 WL 6907304 at *1. The District Court applied the First Step Act retroactively as authorized by the law and reduced the defendant's sentence. *Powell* is substantially the same. It is not clear how these cases have any relevance here. Mr. Hall has not been convicted, nor has he received a sentence in violation of the First Step Act. Thus, Mr. Hall's reliance on the First Step Act is of no relevance to this case at this stage.

Mr. Hall also claims that because § 846 does not have its own special assessment fee upon conviction, he should be released from imprisonment. To support this claim, Mr. Hall cites to *Ray v. United States*, 481 US 736, 107 S. Ct. 2093, 95 L. Ed. 2d 693 (1987). *Ray* is a per curiam decision where the Court found that the defendant was not serving concurrent sentences as necessary for the application of the 'concurrent sentence doctrine' because he was assessed a special assessment fee for all three counts. It would appear Mr. Hall's argument

19

on the special assessment fee is just an extension of his argument as to the penalty under § 846.  As the Court has repeatedly stated above, § 846 does have a penalty provision, which is "the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

Mr. Hall's citation to *Pinkerton v. United States*, 328 U.S. 640, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946) is also misplaced.  While *Pinkerton* does stand for the proposition that a criminal defendant can be charged with both conspiracy and the substantive offense that was the object of the conspiracy, this does not establish why Mr. Hall's case should be dismissed.  Congress in enacting § 846 was clear on what the punishment for violating that section is, which is "the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."  The Court is repeating itself because it is important for Mr. Hall to understand that his claims fail not because the case law he cites it not good law, but because the case law he cites does not apply to his case.

### b.  Fact Finder and Burden of Proof

Mr. Hall argues that § 846 unconstitutionally allows defendants to be sentenced based on facts solely determined by the district court.  Mr. Hall bases his motion on the assumption that the district court judge, and not the jury, would be finding facts that determine his guilt and statutory punishment.  He further assumes that the burden of proof will be by a preponderance of the evidence, and not beyond a reasonable doubt.  These assumptions are incorrect.

The jury will be tasked with determining if Mr. Hall is guilty of the offense charged in the superseding indictment.  The jury will be instructed that it may only

find Mr. Hall guilty of the charged offense if it finds each element of the offense proven beyond a reasonable doubt.  If the jury finds Mr. Hall guilty of the charged offense, the penalty provision of § 841(b) will be imposed based solely on the jury verdict.

Mr. Hall is partially correct in that the Court is permitted to find facts by a preponderance of the evidence that could affect his penalty.  This is because a judge has authority "to exercise broad discretion in imposing a sentence *within* a statutory range."  *United States v. Booker*, 543 U.S. 220, 233, 125 S. Ct. 738, 750, 160 L. Ed. 2d 621 (2005) (emphasis added).  But a court is not permitted to find any facts that would "increase the penalty for a crime beyond the prescribed statutory maximum," *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362–63, 147 L. Ed. 2d 435 (2000), or increase the mandatory minimum."  *Alleyne v. United States*, 570 U.S. 99, 111–12, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013).  Nor may the Court impose a penalty outside the statutory range based on facts not found by the jury.  *Blakely v. Washinton*, 542 U.S. 296, 304, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

The Court rejects Mr. Hall's argument that §§ 846 and 841 authorize the Court to find facts in violation of *Apprendi, Alleyne*, and *Blakely*.  Sections 846 and 841 do not authorize a court to find facts that increase the statutory maximum and minimum sentence.  The statutory penalty, if any, Mr. Hall is subject to will be determined from the facts found by the jury beyond a reasonable doubt, not the Court and, as stated above.

21

Mr. Hall cites to *United States v. Shabani*, 513 U.S. 10, 115 S. Ct. 382, 130 L. Ed. 2d 225 (1994) for the proposition that the Court in *Shabani* held that a prosecutor does not need to prove an overt act beyond the agreement to conspire under § 846.  Mr. Hall's argument, while unclear, appears to be asserting that— because *Shabani* says a prosecutor only needs to prove the agreement to the jury, the jury does not find drug quantity—and thus § 841(b) penalties do not apply to § 846.  This argument fails because it misinterprets *Shabani*, which does not hold that the *only* element of an offense under § 846 is the conspiracy itself, it holds that an overt act in furtherance of the conspiracy is not an element.  In addition, to be guilty of conspiracy one must conspire to commit or aid in the commission of the predicate criminal act.

Mr. Hall cites to *United States v. Obiora*, 910 F.3d 555 (1st Cir. 2018) in his motion to dismiss.  In *Obiora*, the sentencing court did not apply the ten-year mandatory minimum under § 841(b)(1)(A)(i) because the indictment did not charge the drug quantity amount for that penalty to be applicable.  *Obiora* is factually distinct and irrelevant to this case because the superseding indictment charges Mr. Hall with specific quantity amounts.  *See* Superseding Indictment.

## C.  Joinder and Duplicity

Mr. Hall argues that combining §§ 846 and 841 would result in an improper joinder of offenses.  Mr. Hall also argues that the charges are duplicitous.

"An indictment is duplicitous if it joins two or more distinct crimes in a single count."  *United States v. Aracri,* 968 F.2d 1512, 1518 (2d Cir. 1992).  "A conspiracy indictment presents 'unique issues' in the duplicity analysis because 'a single

agreement may encompass multiple illegal objects.' . . . In this Circuit 'it is well established that '[t]he allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for '[t]he conspiracy is the crime and that is one, however diverse its objects.''" *Id.*

Here, Mr. Hall has been charged in Count One with conspiracy to distribute and to possess with intent to distribute heroin, cocaine, and cocaine base in violation of 21 U.S.C. §§ 846, 841(a), and 841(b).  Section 846 provides that any persons who conspires to commit any offense defined in its subchapter is subject to the same penalties prescribed for said offense.  Within that subchapter is § 841(a), which provides that: "it shall be unlawful for any person knowingly or intentionally – (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."  This is the offense conduct.  Section 841(b) proscribes the statutory penalties for violating subsection (a).  In other words, section 846 is the conspiracy element, 841(a) is the offense specific element, and 841(b) is the proscribed penalties.  These two statutes work collectively in cases such as this, where the offense conduct is conspiracy to distribute or possess with intent to distribute an illegal substance.  Put another way, conspiracy is simply a means by which a crime can be committed through the combined efforts of multiple people, some of whom may act independently, but in furtherance of the aims of the conspiracy.

Mr. Hall miscites to *Winston*, 37 F.3d 235, which is discussed above.  *Winston* is also factually distinct from this case.  In *Winston*, the defendant was charged with both conspiracy and possession separately.  Here, Mr. Hall is charged with

just conspiracy, which as discussed above, is a single violation for the purpose of § 841.

Mr. Hall also argues that he should not be charged twice for the same offense on the basis that § 841 is a lesser included offense of § 846.  As stated above, §§ 846 and 841, as charged in this case, constitute a single offense. In other words, § 841 as charged here is not the lesser included offense of § 846, it is the offense specific element of the conspiracy charge.  As explained above, conspiracy is a means by which a criminal act can be committed.

## VI.   APPOINTMENT OF COUNSEL

Mr. Hall filed, *pro se*, a letter stating that "there has been attorney client break down in communication and trust I can not effectively prepare myself for trial. I would like to request new coun[sel]."  Mot. for Appt. of Counsel, Dkt. 518.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  The right to counsel is often referred to as fundamental.  *Luis v. United States*, 136 S. Ct. 1083, 1089, 194 L. Ed. 2. 256.  In *Luis*, the Supreme Court cited to the Court's explanation as to why this right is of such importance from *Gideon v. Wainwright*, 372 U.S. 335, 344–45, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963):

> The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires

24

the guiding hand of counsel at every step in the proceedings against
him. Without it, \*1089 though he be not guilty, he faces the danger of
conviction because he does not know how to establish his innocence.'

*Luis*, 136 S. Ct. at 1088–89.

"[A]n element of this right is the right of a defendant *who does not require
appointed counsel* to choose who will represent him."  *United States v. Gonzalez-
Lopez*, 548 U.S. 140, 144, 126 S. Ct. 2557, 2561, 165 L. Ed. 2d 409 (2006) (emphasis
added).  "[T]he right to counsel of choice does not extend to defendants who
require counsel to be appointed for them."  *Id.* at 151.  "[A]n indigent defendant,
while entitled to adequate representation, has no right to have the Government pay
for his preferred representational choice."  *Luis*, 136 S. Ct. at 1089.  The Sixth
Amendment does not guarantee "meaningful relations" between an accused and
his counsel.  *Morris v. Slappy*, 461 U.S. 1, 14, 103 S. Ct. 1610, 75 L. Ed. 2d 610 (1983).

"A defendant who elects to be represented, however, does not 'surrender
control entirely to counsel.'"  *United States v. Rosemond*, 958 F.3d 111, 119 (2d Cir.
2020) (citing to *McCoy v. Louisiana*, 138 S. Ct. 1500, 1508, 200 L. Ed. 2d 821 (2018)).
However, "[b]y retaining counsel, defendants necessarily relinquish some
autonomy to their attorneys."  *Id.* (citing to *Taylor v. Illinois*, 484 U.S. 400, 418, 108
S. Ct. 646, 98 L. Ed. 2d 798 (1988)).

Trial management is the lawyer's province: Counsel provides his or
her assistance by making decisions such as 'what arguments to
pursue, what evidentiary objections to raise, and what agreements to
conclude regarding the admission of evidence.' . . . Some decisions,
however, are reserved for the client—notably, whether to plead guilty,
waive the right to a jury trial, testify in one's own behalf, and forgo an
appeal.

*McCoy*, 138 S. Ct. at 1508.

25

In brief summary, the Sixth Amendment "guarantees the right to *effective* assistance of counsel"; *Rosemond*, 958 F. 3d at 121 (emphasis in original); not counsel of choice when the defendant requires counsel to be appointed to them; *Luis*, 136 S. Ct. at 1089.

Here, Mr. Hall has not established how the "break down in communications and trust" relates to his counsel's ability to effectively represent him. If Mr. Hall is dissatisfied with his counsel's refusal to assert the *pro se* motions he raised that are addressed above, he is mistaken. The Court has taken time in this decision today to explain why all of Mr. Hall's arguments are meritless. The Court's holdings support the propriety of counsel's position in refusing to file these facially meritless motions. Not only were the motions meritless, they hampered the administration of justice and delayed the adjudication of meritorious matters.

None of the claims raised in the *pro se* motions would have resulted in the dismissal or favorably advanced Mr. Hall's case, which is something any competent criminal defense attorney knows. Assigning new counsel would be futile because it will not alter that fact. If his dissatisfaction stems from his attorney's unwillingness to file the meritless motions, Mr. Hall would be no more satisfied with his third appointed counsel than he has been with his first two.

A change in counsel at this stage of the case, considering this case has been pending for almost twenty-one months, should only be afforded if absolutely necessary to preserve Mr. Hall's right to effective assistance of counsel.

This Court did not conduct a hearing on Mr. Hall's motions concerning counsel because Attorney Felsen stated that upon reflection she thought Mr. Hall

did have a meritorious position.  Therefore, they remain pending.  Dkt. 471; 518.
The Court will refer these motions to a Magistrate Judge for adjudication.

### VII.    CONCLUSION

For the aforementioned reasons the Court DENIES Mr. Hall's motion for a bill of particulars, Dkt. 499; motion to sever, Dkt. 506; motion for appointment of substitute counsel, Dkt. 518; and motions to dismiss, Dkt. 506, 524, 525, 526, 527.

The Court refers Mr. Hall's motions for self-representation and substitute counsel to a Magistrate Judge for adjudication. Dkt. 471; 518.  If the Magistrate Judge determines Mr. Hall is not entitled to substitute counsel, the Magistrate Judge is to conduct a *Faretta,* hearing to afford him an opportunity to reconsider and if he decides to represent himself, that his decision is knowingly and intelligently made.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated this day in Hartford, Connecticut: January 6, 2021